# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ALAN EDMUNDS,

     Petitioner,

-vs-                                                  Case No.  8:10-CV-1426-T-27TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

## <u>ORDER</u>

Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") (Dkt. 1).  Petitioner challenges a conviction for attempted robbery with a weapon while masked entered in 2003 by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida.  Respondent filed a response to the petition (Dkt. 16).  Petitioner filed a reply to the response (Dkt. 23).

The matter is now before the Court for consideration on the merits of Petitioner's claims.  An evidentiary hearing is not required for the disposition of this matter.  Rules Governing Section 2254 Cases 8(a) (2013).

## <u>Procedural History</u>

Petitioner was charged by Supersedes Information with attempted robbery with a deadly weapon while wearing a mask (Resp. Ex. 1, Vol. I at record pp. 12-15).  He was found guilty after a jury trial of the lesser included offense of attempted robbery with a weapon while wearing a mask

(Id. at record pp. 51-52). He was adjudicated guilty and sentenced as a habitual felony offender to 15 years in prison (Id. at record pp. 53-61). The state appellate court affirmed the judgment of conviction without written decision (Resp. Ex. 4); *Edmunds v. State*, 871 So. 2d 222 (Fla. 2d DCA 2004) [table].

Petitioner filed a *pro se* motion for reduction or modification of sentence pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure, which the state post conviction court summarily denied (Resp. Ex. 7).

Thereafter, Petitioner filed a *pro se* motion for post conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("3.850 motion") (Resp. Ex. 8). Subsequently, he filed a supplement to his 3.850 motion (Resp. Ex. 9), followed by an amended 3.850 motion (Resp. Ex. 10). The state post conviction court summarily denied two of the grounds raised in the amended 3.850 motion, and directed the State to respond to the remaining three grounds (Resp. Ex. 11). After the State responded (Resp. Ex. 12), the state post conviction court ordered an evidentiary hearing on the remaining three grounds (Resp. Ex. 13). Prior to the evidentiary hearing, Petitioner filed an "Addendum" to the amended 3.850 motion in which he raised another ineffective assistance of counsel claim (Resp. Ex. 14). The state post conviction court summarily denied the claim raised in Petitioner's "Addendum" (Resp. Ex. 15). Following the evidentiary hearing (Resp. Ex. 16), the state post conviction court denied the amended 3.850 motion (Resp. Ex. 17).[1] The state post conviction court denied Petitioner's motion for rehearing (Resp. Ex. 18). The state appellate court *per curiam* affirmed the denial of the amended 3.850 motion without written decision (Resp. Ex. 22); Edmunds

---

[1]Although the state post conviction court had previously denied Grounds 4 and 5 of the amended 3.850 motion (Resp. Ex. 11), it again considered and denied those grounds in the final order denying the amended 3.850 motion in its entirety (Resp. Ex. 17).

v. State, 29 So. 3d 1126 (Fla. 2d DCA 2010) [table].  Petitioner's motion for rehearing (Resp. Ex. 24) was denied by the appellate court (Resp. Ex. 25).

## The AEDPA Standard of Review

Petitioner timely filed the instant federal petition, pursuant to 28 U.S.C. § 2244(d), raising ten grounds for relief.  His petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24,1996.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Section 104 of the AEDPA amended 28 U.S.C. § 2254 by adding the following provision:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254, as amended by the AEDPA, establishes a highly deferential standard for reviewing state court judgments.  *Parker v. Secretary, Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003) (citing *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002)).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This language requires an examination of the state court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1401 (2011).  In

3

addition, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson*, 300 F.3d at 1342. The federal court will presume the correctness of state court findings of fact, unless the petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). When measured against the AEDPA standard, it is clear that Petitioner's petition is due to be denied.

## Standard of Review for Ineffective Assistance of Counsel Claims

Petitioner claims that his trial counsel was incompetent and performed substantially below the standard guaranteed by the Sixth Amendment and that he was prejudiced as a result. A petitioner claiming ineffective assistance of counsel must meet the two-part standard for counsel's performance established by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a *prima facie* claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are rare. *Waters v. Lewis*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

## Procedural Default

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity

4

to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

5

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## Discussion

**Ground One**

WHETHER THE PETITIONER WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL

6

COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL WHERE
THE STATE FAILED TO PRESENT SUFFICIENT COMPETE [SIC] EVIDENCE OF SPECIFIC
INTENT TO COMMIT ATTEMPTED ARMED ROBBERY THAT IS INCONSISTENT WITH
APPELLANT'S THEORY OF DEFENSE. (Dkt. 1 at p. 5).

Petitioner argues that he was denied due process when the state trial court denied his motion
for judgment of acquittal, where the State failed to rebut his reasonable hypothesis of innocence,
namely, that he did not intend to commit a robbery, but rather was playing a practical joke on his
wife.  Petitioner also argues that the evidence was insufficient to support a conviction for attempted
robbery with a weapon because the State failed to prove Petitioner intended to deprive another of
property.

To the extent Petitioner relies on his state law argument of whether, under Florida law, the
court should have granted his motion for judgment of acquittal because the State failed to contradict
his reasonable hypothesis of innocence,[2] the Court finds that this issue is a matter of state law for
which federal habeas corpus relief does not lie.[3]  Federal habeas relief for a person in custody
pursuant to the judgment of a state court is available only on the ground that the custody violates the
Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). *See also Jones v. Goodwin*,
982 F.2d 464, 471 (11th Cir. 1993). Petitioner's claim challenging the state court's failure to grant
his motion for judgment of acquittal under state law presents no basis for federal habeas corpus relief
because the claim presents no federal constitutional question.  28 U.S.C. § 2254(a). *See also Estelle*

_____

[2]"'Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest
guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.'"
*Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002) (quoting *State v. Law*, 559 So. 2d 187, 188 (Fla. 1989)).

[3]Federal law does not mandate that the circumstantial evidence must be inconsistent with any
reasonable hypothesis of innocence. *See United States v. Garcia*, 13 F.3d 1464, 1473 (11th Cir.), *cert. denied*, 512 U.S.
1226 (1994) ("The Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only
reasonable conclusion.") (citation omitted).

*v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions."). The limitation on federal habeas review to a claim of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).

To the extent Petitioner argues that there was insufficient evidence to support the attempted robbery conviction, when reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Id.*; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

In Florida, "[t]o prove attempted robbery, the State  must show that the accused formed the intent to take the victim's property and committed some overt act to accomplish that goal." *Fournier v. State*, 827 So. 2d 399, 400-401 (Fla. 2d DCA 2002) (citation omitted).  "[A] defendant's intent is generally a jury question. But the State must present some competent, substantial evidence from which the jury could infer the defendant's intent to deprive the victim of property."  *Id.* (citation omitted).

During trial, the State called Richard Herbert, an assistant manager at Hungry Howie's Pizza, who was working there on the night of August 11, 2002 (Resp. Ex. 1, Vol. II at 97-98).  Herbert testified in pertinent part that on that night at approximately 10:30 p.m., a female came up to the door

8

of the store (Id. at 101).  The door was locked, and a co-worker, Angel DeJesus, pressed a button underneath the cash register which unlocked the door to let the woman into the store (Id.).  The woman entered the store, and the door automatically closed and locked behind her (Id.).  The woman appeared "frantic" and "nervous," was "walking back and forth and shaking," and was smoking a cigarette (Id. at 101-02).  Herbert told her that she could not smoke inside the store (Id. at 102).  The woman went outside to throw away her cigarette (Id.).  After she came back into the store, the door again shut and locked behind her (Id. at 103).

Within ten seconds after the woman came back into the store, a man came up to the door of the store wearing a "Halloween" mask, a red jacket, and gloves (Id. at 102-04, 122).[4]  The man was pulling the door to try to get into the store (Id. at 105).  The man had a gun in his hand, pointed it at Herbert, and started to waive it around (Id. at 106).  The handle of the gun was covered by a plastic bag, but Herbert could see the barrel of the gun (Id. at 107).  Herbert ran toward the cash register and grabbed a gun that was underneath the register (Id. at 108).  Herbert aimed the gun at the man (Id.).  He tried to cock the gun back, but it jammed (Id. at 108-09).  The man at the door continued to stand in front of the door, and the woman inside the store was screaming (Id. at 109-10).  Herbert and DeJesus hid behind the counter, and DeJesus "unjammed" the gun (Id. at 110-11).  When Herbert and DeJesus stood up from behind the counter, the man at the door was gone (Id. at 111).  Herbert called the police (Id.).  He did not let the woman out of the store because DeJesus had told him that she had been acting suspiciously (Id.).

DeJesus testified in pertinent part that when the man at the door could not get in, he "backed

_____

[4]Petitioner does not dispute that he was the man who came to the door of the store.

up, lifted up his shirt and pulled [the gun] out and pointed it facing all of us." (Id. at 128). He also testified that when the man was trying to enter the store, the woman tried to push the door open (Id. at 133-34). Neither the man outside the store nor the woman inside asked Herbert or DeJesus to give them money (Id. at 135). When DeJesus got up from behind the counter, he saw the man running away (Id. at 129).

Officer Mathew Smith of the Tampa Police Department testified that he responded to a call that the Hungry Howie's store had been robbed (Id. at 143). When he arrived, there were two men and a woman in the store (Id. at 143). The men were Herbert and DeJesus. The woman showed Officer Smith her identification card, which indicated that her name was Jennifer Edmunds (Petitioner's wife) (Id. at 148-49).[5] Officer Smith took Jennifer Edmunds into custody and placed her into Officer Hevel's patrol car (Id. at 149). Officer Smith discovered Petitioner's driver's license in Jennifer Edmunds purse (Id. at 149-50). Petitioner's driver's license indicated that his residence was in Palm Harbor, Florida, approximately a 45 minute drive from the Hungry Howie's store in Tampa (Id. at 150).

Officer John Haggart of the Tampa Police Department testified in relevant part that he received a call that an armed robbery occurred at the Hungry Howie's (Id. at 153). He received information that the suspect was a white male wearing shorts with a red jacket, a Halloween mask, and gloves, and the suspect had a pistol (Id.). When Officer Haggart pulled into the parking lot of a video store adjacent to the Hungry Howie's parking lot, he saw a white male sitting in a truck (Id. at 154). Officer Haggart walked by the vehicle, and the man exited the vehicle and walked into the

---

[5]Petitioner does not dispute that Jennifer Edmunds is his wife, and that she was in the Hungry Howie's at the time he came to the door of the store.

video store (Id. at 155).  Officer Haggart watched the man as he walked up and down the aisles of

the video store without stopping to look at any videos (Id. at 156).  Officer Haggart then saw the man

sit down at a desk where individuals can complete applications for employment (Id.).   Officer

Haggart then walked over to the man's truck, and he looked through an open window and saw a

handgun, gloves, and a red jacket inside the truck (Id. at 157).[6]  Officer Haggart then realized that

the man he saw go into the video store was likely the suspect in the attempted robbery at Hungry

Howie's (Id. at 159). Officer Haggart and Officer Yost entered the video store with their guns drawn

(Id. at p. 160).  They ordered the suspect to get on the ground, but he stood up from the desk and

refused to go to the ground (Id.).  The officers forced the suspect to the ground and handcuffed him

(Id.).  The suspect was arrested and placed in a patrol car (Id.).  During trial, Officer Haggart

identified Petitioner as the man he arrested at the video store that night (Id. at 160-61).

After Officer Hevel testified in pertinent part that after he arrived at the scene, both Petitioner and

Jennifer Edmunds were put into the back of his patrol car (Resp. Ex. 1, Vol. III at 198-99).  Officer

Hevel activated a video camera in his patrol car which taped Petitioner and Jennifer Edmunds (Id.

at 195-200).  The video camera recorded for approximately 20 to 30 minutes (Id. at 199-201).  The

videotape was published to the jury (Id. at 202).

After Officer Hevel testified, the State rested (Id. at 208).  Petitioner moved for a judgment

of acquittal, which the court denied (Id. at 208-211).  The defense rested without presenting any

evidence (Id. at 211).

The videotape of Petitioner and his wife in the patrol car was not transcribed (Resp. Ex. 2

---

[6]The mask was subsequently discovered in Petitioner's truck after the truck had been impounded
(Resp. Ex. 1, Vol. III at 183).

at p. 12).  However, according to Petitioner's appellate brief, "[m]uch of [Petitioner and his wife's] conversation is unintelligible."  (Id.).  Petitioner could be heard repeatedly apologizing to his wife (Id.).  He also stated that he was committing a prank on her, trying to scare her, because she earlier had committed a prank on him by hiding his truck (Id.).   He also stated that he knew the door to Hungry Howie's was locked, he did not expect the store employees' reaction, and he hoped that he would not go to jail for his practical joke (Id.).

The trial record shows that the State presented competent, substantial evidence from which the jury could infer that Petitioner intended to rob the Hungry Howie's.  The Hungry Howie's employees' testimony established that Jennifer Edmunds entered the store and appeared very nervous and was shaking.  When Petitioner appeared outside the store, he was wearing a mask and gloves, brandishing a gun, and pointing the gun at the employees.  Despite the fact that the man at the door was concealed by a mask, holding a gun, and trying to open the locked door, Jennifer Edmunds attempted to open the door.  The jury certainly could have inferred from the evidence that Jennifer Edmunds knew that Petitioner was the man at the door, and Petitioner intended to rob the Hungry Howie's, rather than play a practical joke on his wife.  Moreover, the jury could have concluded that Petitioner intended to rob the Hungry Howie's from the evidence that he fled the scene with his wife still in the store, did not return to the Hungry Howie's, but instead sat in his truck at an adjacent parking lot, then went into the video store after he was spotted by Officer Haggart, walked around without stopping to look at any videos, and failed to comply with the officers' orders after they approached him with their weapons drawn.  *See Leon v. State*, 68 So. 3d 351, 353 (Fla. 2d DCA 2011) ("[E]vidence of flight, concealment, or resistance to lawful arrest after the fact of a crime is admissible as being relevant to consciousness of guilt which may be inferred from such

circumstances.") (quoting *Twilegar v. State*, 42 So. 3d 177 (Fla. 2010)).

In sum, the Court finds that in considering the evidence adduced at Petitioner's trial in the light most favorable to the State, any rational trier of fact could conclude beyond a reasonable doubt that Petitioner intended to rob the Hungry Howie's store.  Therefore, Petitioner has failed to demonstrate that there was insufficient evidence supporting the attempted robbery conviction.

The state appellate court's decision affirming Petitioner's conviction was not contrary to Supreme Court precedent.  Accordingly, Ground One does not warrant relief.

**Ground Two**

WHETHER THE PETITIONER WAS DENIED DUE PROCESS OF LAW WHEN THE STATE COURTS FAILED TO FOLLOW ITS OWN LAWS BY NOT ADDRESSING CLAIMS RAISED IN PETITIONER'S POST-CONVICTION PROCEEDINGS? (Dkt. 1 at p. 9).

Petitioner contends that he was denied due process when the state post conviction court failed to address 17 claims for relief that Petitioner raised in a supplement to his original 3.850 motion. This claim does not warrant federal habeas relief. It is well established in the Eleventh Circuit that a prisoner's challenge to the process afforded him in a state post conviction proceeding does not constitute a cognizable claim for habeas corpus relief. This is so  because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Carroll v. Secretary, DOC, Fl. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (holding that habeas petitioner's claim, that the state court violated his due process rights when it summarily denied his post conviction claim without an evidentiary hearing, did not state a claim on which a federal court may grant habeas relief); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the

cause of petitioner's detention"); *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir.2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.").

Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

WHETHER THE PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, WAS DEPRIVED. (Dkt. 1 at p. 10).

In Ground Three, Petitioner raises seven claims of ineffective assistance of trial counsel.

1. Sub-Claim A

WHEN COUNSEL CAUSED THE PETITIONER'S DECISION TO PROCEED TO TRIAL AND NOT TO FORGO A PLEA OFFER TO BE INVOLUNTARY? (Dkt. 1 at p. 10).

Petitioner contends that trial counsel rendered ineffective assistance by: 1) assuring Petitioner "that he could prove the Petitioner's innocence at trial because the Petitioner had did [sic] nothing wrong;" and 2) leading Petitioner to believe that he would be calling both Petitioner and Petitioner's wife to testify at trial (Dkt. 1 at pp. 11-12). Petitioner asserts that but for counsel's actions he would have accepted the State's plea offer of 74 months imprisonment and not continued to trial. Finally, Petitioner alleges that had he "known that counsel was going to concede the Petitioner's guilt at trial. . .the Petitioner would have accepted the plea offer. . . ." (Id. at p. 12).

In state court, Petitioner raised a similar claim in Ground 1 of his amended Rule 3.850 motion (Resp. Ex. 10). There, Petitioner alleged that his decision to proceed to trial was involuntary because counsel misled Petitioner with regard to the evidence that would be presented on behalf of the defense at trial (Id.). Specifically, Petitioner argued that he would not have proceeded to trial had

14

he known that counsel was: 1) going to concede Petitioner's guilt; 2) not going to call Petitioner's wife to testify; and 3) going to fail to object to the prosecutor arguing facts not in evidence during his closing argument (Id.).

In denying the claim, the state post conviction court stated:

> In ground one of his Motion, Defendant alleges ineffective assistance of counsel, rendering involuntary Defendant's decision to proceed to trial. Specifically, Defendant contends that counsel was deficient for failing to inform him adequately of counsel's strategies at trial. Defendant alleges that, had he known counsel's strategies and known that counsel would offer no witnesses at trial, Defendant would not have proceeded to trial, and instead would have accepted the plea offer from the State. At the evidentiary hearing, however, Defendant testified that he was aware of counsel's strategies for trial, and that he agreed to them. (See Transcript, February 1, 2007, pp. 38-39, attached). Moreover, counsel testified that Defendant clearly wanted to go to trial because he believed he was innocent. (See Transcript, February 1, 2007, pp. 92-94; See also pp. 31-32, 36, attached). The Court finds counsel's testimony to be credible and finds that the evidence demonstrates that Defendant was aware of and had agreed to counsel's trial strategies and that he did not wish to enter a plea because he believed he would be successful at trial by arguing that his actions were a joke. (See Transcript, February 1, 2007, pp. 31-32, 36, 38-39, 92-94, attached). As such, the Court finds that Defendant has failed to demonstrate how counsel was deficient, and thus warrants no relief on ground one of his Motion for Post Conviction Relief.

(Resp. Ex. 17 at record pp. 180-81).

Initially, Petitioner's claims that he would have accepted the State's plea offer but for: 1) counsel's assurance that he could prove Petitioner's innocence; and 2) counsel leading Petitioner to believe that Petitioner would testify during trial, are unexhausted because Petitioner never presented them to the state courts.  It would be futile to dismiss this case to give Petitioner the opportunity to exhaust these claims in state court because he could have and should have exhausted the claims by

raising them in his Rule 3.850 motion.[7]  *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993) (where a claim has not been exhausted in state courts but would be barred if presented there, a federal court may bar the claim by relying upon the applicable state rules, since exhaustion would be futile). Accordingly, these claims are procedurally defaulted.  Because Petitioner does not allege cause and prejudice for the default, nor is there evidence of "actual innocence," the claims are procedurally barred in federal court.

Petitioner's claims that he would not have proceeded to trial had he known that counsel was going to concede Petitioner's guilt and not going to call Petitioner's wife to testify, however, were presented to the state courts (see Resp. Ex. 10).[8]  Nevertheless, the claims lack merit.

"To establish prejudice based on a rejected plea offer, a defendant must 'establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement.'"  *Harrington v. United States*, 415 Fed. Appx. 986, 989 (11th Cir. 2011) (unpublished) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)). The petitioner's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz,* 930 F.2d at 835).

With regard to Petitioner's claim that he would not have proceeded to trial had he known that

---

[7]Any further attempt at exhaustion in Florida courts would be futile because his claim would be untimely and procedurally barred under Florida law. Fla. R. Crim. P. 3.850(f); *see Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

[8]See also Resp. Ex. 19 at Initial Brief, p. 7, wherein Petitioner alleged "3 factual points" supporting his claim that his decision to proceed to trial was involuntary: "1. Concession of guilt. . .; 2. Not calling Jennifer Edmunds as a defense witness. . .; and 3. Not objecting to every reasonable issue so that the issues would be preserved for appellate review, particularly alleging counsel's failure to object to the state injecting facts not in evidence."

counsel would concede his guilt, the claim fails because counsel never conceded Petitioner's guilt during trial.  As explained in Ground Three, Sub-Claim B *infra*, counsel maintained throughout trial that Petitioner did not intend to commit a robbery, but rather attempted to play a practical joke on his wife.  Counsel's argument that Petitioner's gun was merely a BB gun that had no weight and could not harm anyone, supported Petitioner's defense that he was only playing a joke.  Further, counsel's argument successfully rebutted the prosecutor's argument that Petitioner was in possession of a deadly weapon at the time of the attempted robbery.  Therefore, Petitioner's claim does not warrant relief.

With respect to Petitioner's claim that counsel led him to believe that Jennifer Edmunds would be testifying at trial, and that he would have accepted the State's plea offer had he known she would not be called to testify, the claim likewise does not warrant relief.  First, Petitioner presents no evidence which indicates that prior to his conviction he expressed any desire to plead guilty. During the evidentiary hearing on Petitioner's amended 3.850 motion, Petitioner's trial counsel testified that after he conveyed the State's plea offer to Petitioner, Petitioner told him that "he was innocent and that he. . .didn't want to go to prison."  (Resp. Ex. 16 at record p. 277).  He also testified that despite advising Petitioner that if he proceeded to trial and was found guilty that he could be subjected to enhanced prison sanctions as a habitual felony offender, Petitioner still "wanted to go to trial." (Id. at record p. 278).  When Petitioner was asked what he would have done had he known that trial counsel was not going to call Jennifer Edmunds or witnesses from Blockbuster to testify at trial, Petitioner did not unequivocally state that he would have accepted the State's plea offer.  Rather, he answered "I would have looked further into pleading. . . ."  (Id. at record p. 204).

Second, his allegations regarding this claim are equivocal and inconsistent.  Although during cross-examination at the state evidentiary hearing Petitioner testified that trial counsel "told [him] he was going to call Jennifer [Edmunds to testify at trial,]" Petitioner did not allege either in his state amended 3.850 motion or his federal habeas petition that counsel had told him that he would call Jennifer Edmunds to testify.  Rather, Petitioner alleged that counsel told him that "it would be necessary to have Mrs. Edmunds testify" (Resp. Ex. 10 at record p. 16), and that "counsel convinced the Petitioner that he would be calling Mrs. Edmunds. . .to testify."  (Dkt. 1 at p. 11).

Third, there is evidence in the record to contradict Petitioner's after-the-fact assertion that he did not accept the plea offer because counsel told him that Jennifer Edmunds would testify.  During the state evidentiary hearing, counsel testified that he discussed with Petitioner that "we'd *possibly* call Jennifer Edmunds" if the defense was going to have to introduce the videotape of Petitioner and Jennifer Edmunds' conversation in the back of the police cruiser (Resp. Ex. 16 at record p. 279) (emphasis added).  Moreover, Petitioner's assertion that counsel told him that Jennifer Edmunds would testify or that her testimony was "necessary" or "critical" is contradicted by counsel's testimony.  Counsel attested that: 1) he did not think it was a good idea to call Jennifer Edmunds to testify at trial or take her deposition because she would "get into facts" regarding her and Petitioner's drug use that "would actually arm the State Attorney with evidence," and possibly testify that she had no money when she entered the Hungry Howie's to allegedly order a pizza; and 2) it was his strategy not to call Jennifer Edmunds to testify, and thereby retain first and last closing argument, if Petitioner's defense was elicited through the videotape (Id. at pp. 276-77, 282).

The state court's denial of this claim was not "contrary to" or an "unreasonable application of" clearly established federal law.  Petitioner has failed to establish a reasonable probability that,

absent counsel's alleged ineffective assistance, he would have accepted the State's plea offer.

Therefore, Petitioner has failed to meet the *Strickland* standard by showing that he was prejudiced

by counsel's alleged misadvice.  Accordingly, Sub-Claim A does not warrant relief.

2. Sub-Claim B

COUNSEL CONCEDED THE PETITIONER'S GUILT AT TRIAL. (Dkt. 1 at p. 13).

Petitioner contends that counsel rendered ineffective assistance during closing argument

when he conceded Petitioner's guilt to the charge of attempted robbery with a weapon.  Specifically,

Petitioner takes issue with defense counsel's following statement:

> After he pulled this gun, which is a BB gun, there is no weight to this gun
> whatsoever.  No one is going to get killed with this gun.  And when there was
> nothing in it, nobody can even be injured with this gun.

(Resp. Ex. 1, Vol. III at p. 221).  Petitioner asserts that one element the State was required to prove

was that Petitioner displayed an item that resembled a weapon.  He argues that defense counsel was

ineffective in conceding that Petitioner displayed the BB gun when in fact he never did.

Petitioner raised a similar claim in Ground 2 of his amended Rule 3.850 motion (Resp. Ex.

10).  In denying the claim, the state post conviction court stated:

> In ground two of his Motion, Defendant alleges ineffective assistance of
> counsel for conceding guilt at trial. Specifically, Defendant contends that counsel
> conceded Defendant's guilt when he, in his closing argument, stated that Defendant
> had pulled this gun, which is a B.B. gun. Defendant alleges that, by stating that he
> had a B.B. gun, counsel conceded that Defendant was guilty of the charged offense
> of Attempted Robbery with a Deadly Weapon. At the evidentiary hearing, however,
> Defendant acknowledged that counsel's purpose in conceding the use of a B.B. gun
> was to demonstrate that the gun was made of plastic, carried no weight, and was not
> a deadly weapon. (See Transcript, February 1, 2007, pp. 40-41, 94-96, attached). The
> Court notes that, sometimes, a concession of guilt on certain claims can be sound
> trial strategy, and notes further that such was likely a sound trial strategy here, as the
> jury returned a verdict for the lesser offense of Attempted Robbery with a Weapon.
> *See Atwater v. State*, 788 So. 2d 223, 230 (Fla. 2001). The Court finds counsel's

19

concession of Defendant's use of a B.B. gun to be a strategic decision that this court will not second guess. *See Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). Moreover, counsel testified at the evidentiary hearing that, as the defense presented at trial was that Defendant lacked the requisite intent required to commit Attempted Robbery and his actions were merely part of a practical joke the issue of Defendant's possession of the gun was not of main concern. (See Transcript, February 1, 2007, pp. 95-96, attached). Rather, counsel testified, if the jurors believed the defense presented, Defendant's possession of the B.B. gun was irrelevant. (See Transcript, February 1, 2007, pp. 95-96, attached). The Court finds this testimony to be credible, and finds that, for these reasons, Defendant warrants no relief on ground two of his Motion for Post Conviction Relief.

(Resp. Ex. 17 at record pp. 181-82).

The state courts' denial of this claim was neither an unreasonable application of *Strickland*, nor based on an unreasonable determination of the facts.   Defense counsel did not concede Petitioner's guilt during closing argument.  Rather, counsel argued that Petitioner intended to commit a "practical joke," not a robbery (Resp. Ex. 1, Vol. III at pp. 220-24).  Therefore, counsel's argument was not the equivalent of entering a guilty plea on Petitioner's behalf without his consent. *Cf. McNeal v. Wainwright*, 722 F.2d 674, 677 (11th Cir. 1984) (tactical decision to admit to a lesser offense does not amount to guilty plea without a defendant's consent and the tactical decision does not require client's consent).

Consequently, Petitioner must demonstrate that counsel's decision to concede that Petitioner had "pulled" the BB gun was objectively unreasonable.  As defense counsel stated during the post conviction evidentiary hearing, counsel's argument at trial that the gun was a BB gun with "no weight" that was not capable of killing anyone, supported Petitioner's defense that he was playing a practical joke and did not intend intending to commit a robbery (Resp. Ex. 16 at record p. 280). Petitioner has not demonstrated that defense counsel's argument was anything other than reasonable trial strategy.   Therefore, he has failed to show that counsel's performance was objectively

unreasonable. *See Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (Counsel's performance strongly presumed to have been reasonable and adequate, and "great" deference must be shown to counsel's choices dictated by reasonable trial strategy.).

To the extent Petitioner argues that counsel was ineffective in stating that Petitioner had displayed the gun (because he allegedly never did so), and that he was prejudiced by the statement because it established the element that he displayed a weapon, the claim is without merit. First, during the post conviction evidentiary hearing, defense counsel testified that Petitioner told him that he did display the gun while outside the door of the Hungry Howie's store (Id. at record pp. 274-76). Second, even if Petitioner did not tell counsel that he displayed the gun, he admitted during the evidentiary hearing that he had the BB gun in his possession in a bag while he was in front of the Hungry Howie's (Id. at record p. 200). The jury was instructed in pertinent part that "[i]f you find that the defendant *carried* a weapon that was not a firearm and/or a deadly weapon in the course of committing the robbery, you should find him guilty of robbery with a weapon." (Resp. Ex. 1, Vol. I at record p. 38) (emphasis added). Therefore, despite Petitioner's argument to the contrary, the State was not required to prove that Petitioner displayed the gun in order to prove Petitioner was guilty of robbery with a weapon. *See State v. Gibson*, 452 So. 2d 553, 556 (Fla. 1984) ("The elements of the crime [of robbery while armed] do not include displaying the weapon or using it in perpetrating the robbery."), *overruled on other grounds by Hall v. State*, 517 So. 2d 678 (Fla. 1988). Consequently, because Petitioner admits that he carried a gun during the robbery, and there was ample evidence at trial establishing that fact, Petitioner cannot demonstrate that he was prejudiced by counsel's statement that Petitioner "pulled" the gun.

Third and finally, the jury was instructed in pertinent part that "[i]f you find that the

defendant carried a B.B. gun in the course of committing the robbery and that the B.B. gun was a deadly weapon, you should find him guilty of robbery with a deadly weapon."  (Resp. Ex. 1, Vol. I at record p. 38).  The prosecutor argued that Petitioner's gun was a deadly weapon (Resp. Ex. 1, Vol. III at pp. 233, 240).  In Florida, robbery with a deadly weapon is "punishable by imprisonment for a term of years not exceeding life imprisonment. . . ."  Sec. 812.13(2)(a), Fla. Stat.  Defense counsel successfully argued that the gun was not a deadly weapon (Id. at pp. 221, 242).  The offense of robbery with a weapon is punishable by a maximum of 30 years in prison.  *Mathis v. State*, 704 So. 2d 1114 (Fla. 5th DCA 1998).   Therefore, Petitioner benefitted from counsel's argument regarding the BB gun.

Petitioner fails to show either deficient performance or prejudice.  Consequently, the Court finds that the state courts' denial of this claim was neither an unreasonable application of *Strickland*, nor based on an unreasonable determination of the facts. Accordingly, Ground Three, Sub-Claim B does not warrant relief.

3. Sub-Claim C

COUNSEL'S FAILURE TO CALL MRS. JENNIFER EDMUNDS AT TRIAL. (Dkt. 1 at p. 14).

Petitioner contends that counsel rendered ineffective assistance in failing to call Jennifer Edmunds to testify at trial.  Petitioner asserts that Jennifer Edmunds would have testified that: 1) on the night of the crime, she and Petitioner were on their way home after a day of "partying," they were hungry, and she decided Hungry Howie's would be fast and affordable; 2) she and Petitioner often play practical jokes on each other; 3) Petitioner did not tell her to go into the Hungry Howie's; 4) she was the "keeper of the finances," and she had Petitioner's wallet in her purse on the day of the crime; 5) she was not acting nervous inside the Hungry Howie's until after the employee pulled out

the gun and realized that he was aiming it at Petitioner; 6) Petitioner was not attempting to rob anyone, never discussed robbing anyone with her, and would not have robbed anyone because "they were proud parents of new twins, and had five (5) children to think about;" 7) she was "freaked out" after she was arrested and placed in the police car and lead to believe she was going to jail; and 8) she and Petitioner were not in the police car when the officer set up the video camera, and they were not aware that they were being recorded (Dkt. 1 at p. 16).

In state court, Petitioner raised this claim in Ground Three of his amended Rule 3.850 motion (Resp. Ex. 10).  In denying the claim, the state post conviction court stated:

> In ground three of his Motion, Defendant alleges ineffective assistance of counsel for failure to investigate, subpoena, and call a witness. Specifically, Defendant contends that his counsel's performance was deficient based on his failure to investigate, subpoena, and call as a witness Defendant's wife, Jennifer Edmunds, whom Defendant alleges was available to testify, and whose testimony would have contradicted that of the State's witnesses.  At the evidentiary hearing, counsel testified that, as a matter of strategy, he chose not to call Jennifer Edmunds as a witness, as doing so would have been detrimental to Defendant. (See Transcript, February 1, 2007, pp. 89, 91-92, 97-98, attached). Specifically, Jennifer Edmunds had been engaged in drug use with Defendant on the night of the offense, and to depose and call her as a witness would be to arm the State with this evidence and afford the State an opportunity to highlight Defendant's drug use. (See Transcript, February 1, 2007, pp. 44-45, 89, 91-92, 97 98, attached). The Court finds counsel's testimony to be credible, and finds counsel's decision not to call Jennifer Edmunds as a witness to be a strategic one that this Court will not second guess. *See Johnson v. State*, 769 So. 2d 990, 1001 (Fla. 2000). As such, Defendant warrants no relief on ground three of his Motion for Post Conviction Relief.

(Resp. Ex. 17 at p. 182).

Initially, to prevail on a claim alleging ineffectiveness of counsel for failing to call a certain witness "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Bray v. Quarterman*, 265 Fed. Appx.

23

296, 298 (5th Cir. 2008) (unpublished) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.

1985)). "The petitioner must also show prejudice, i.e., a 'reasonable probability' that the uncalled

witnesses would have made [a] difference to the result." *Id*. (quoting *Alexander v. McCotter*, 775

F.2d at 603).

Although Petitioner alleges that his wife was available to testify at his trial, the record belies

his claim.  During her deposition following Petitioner's trial, Jennifer Edmunds testified in pertinent

part that at the time of Petitioner's trial she "was in the hospital" because she "had a pancreatic

attack" and "a cyst that had hemorrhaged."  (Dkt. 1-2, Ex. "G" at Jennifer Edmunds' deposition p.

29).  Further, at trial during argument on the admissibility of the State's video tape of Petitioner and

Jennifer Edmunds in the back of the police cruiser, defense counsel stated in pertinent part that "I

don't have [Jennifer Edmunds], she is not subject to cross-examination and it is highly prejudicial."

(Resp. Ex. 1, Vol. II at p. 81).

Petitioner has not presented any evidence that Jennifer Edmunds was available to testify at

trial.  Consequently, he cannot show deficient performance by counsel.  *See Williamson v. Moore*,

221 F.3d 1177, 1181 (11th Cir. 2000) ("Counsel cannot be said to be ineffective for failing to call

an unavailable witness.").

Moreover, even if Jennifer Edmunds was available to testify at Petitioner's trial, Petitioner

has not demonstrated that defense counsel's decision not to call her as a witness was anything other

than reasonable trial strategy. "[W]hich witnesses, if any, to call, and when to call them, is the

epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v.

Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Disagreements by a defendant with counsel's tactics

or strategies will not support a claim of ineffective assistance of counsel. A habeas petitioner must

overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

During the state post conviction evidentiary hearing, defense counsel testified that he determined it was not in Petitioner's best interest to call Jennifer Edmunds as a witness because she used drugs, and knew that Petitioner used drugs, on the day of the robbery, and that would "arm the State" with damaging evidence (Resp. Ex. 16 at record p. 277). Also, he was concerned that if he called Jennifer Edmunds to testify, the State would cross-examine her on the fact that she did not have any money when she entered the Hungry Howie's, and that would weaken Petitioner's position that Jennifer Edmunds went into the Hungry Howie's to purchase a pizza and had no knowledge that Petitioner was about to approach the store (Id. at record p. 282). Finally, counsel made a tactical decision that if the evidence that Petitioner was only playing a practical joke came out through the video tape of Petitioner and Jennifer Edmunds' conversation in the back of the police cruiser (which it did), it would not be worth calling Jennifer Edmunds as any testimony she may have provided would not outweigh the advantage of the defense retaining the right to first and last closing argument (Id. at record pp. 282-83).[9]

Under the circumstances in this case, the Court cannot find that no reasonable lawyer would

---

[9]At the time of Petitioner's trial, Fla. R. Crim. P. 3.250 (2002) provided that "a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury." At trial, the defense did not present any testimony, and defense counsel gave the initial and concluding arguments (Resp. Ex. 1, Vol. III at pp. 220-46).

have decided not to call Jennifer Edmunds to testify on behalf of the defense. Therefore, Petitioner has failed to show deficient performance by counsel.

Moreover, Petitioner has not shown prejudice because he has failed to demonstrate that there is a reasonable probability that, but for counsel's failure to call Jennifer Edmunds to testify, the outcome of the trial would have been different.

Petitioner has not demonstrated that the state courts' adjudication of this ineffective assistance claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Accordingly, Sub-Claim C does not warrant habeas corpus relief.

4. Sub-Claim D

COUNSEL'S FAILURE TO OBJECT AND MOVE FOR A MISTRIAL WHEN THE STATE INTERJECTED UNTRUE FACTS AND FACTS NOT IN EVIDENCE, BY STACKING INFERENCES THAT ARGUED THAT THE PETITIONER AND HIS WIFE WERE BOTH IN THE BACK OF A POLICE CAR WHEN OFFICER HEVEL ADJUSTED AND ACTIVATED A CAMERA THAT WAS LOCATED IN THE SQUAD CAR. (Dkt. 1 at p. 18).

Petitioner contends that counsel was ineffective in failing to object to and move for a mistrial based upon the prosecutor's comments during closing argument that Officer Hevel activated and adjusted the camera in his police cruiser while Petitioner and Jennifer Edmunds were sitting in the back seat. Petitioner asserts that Officer Hevel testified that he activated and adjusted the camera before Petitioner and his wife were put into the cruiser, and there was no evidence that the camera was activated or adjusted after Petitioner and his wife were in the cruiser. Therefore, Petitioner argues, trial counsel should have objected to and moved for a mistrial based upon the prosecutor arguing facts not in evidence in his closing statement. He further argues that he was prejudiced by

26

counsel's failure to object to the prosecutor's "false" statements because the prosecutor used them to argue that Petitioner was aware that he was being videotaped, and therefore made false, self-serving statements that he was merely playing a practical joke on his wife.

In state court, Petitioner raised this claim in Ground Four of his amended Rule 3.850 motion (Resp. Ex. 10). In denying the claim, the state post conviction court stated:

> In ground four of his Motion, Defendant alleges ineffective assistance of counsel for failure to object and move for mistrial when the State interjected facts not in evidence. Specifically, Defendant contends that, in its closing argument, the State alluded to facts not in evidence to lead the jury to believe that Defendant's theory of defense that Defendant's actions were a practical joke and not action in furtherance of a crime-was untruthful. Defendant contends that the State, while playing a video for the jury, argued that Defendant was aware of the camera in the police officer's car and was "playing" for the camera, and thus the jury should not believe Defendant's claims on camera that his actions were "a practical joke." Specifically, Defendant contends that the State claimed that Defendant was inside the police officer's car when the police officer turned on the camera, and thus Defendant would have known the camera was recording him. However, Defendant argues, the police officer had testified that he turned on the camera before placing Defendant in the car, and, as such, the State's argument contained facts not in evidence, and was thus objectionable.

> To show ineffective assistance of counsel for failure to object to the State's closing argument, Defendant must show that counsel had no excuse for overlooking the objection, and that the outcome of the case would likely have been different had the objection been made. *See Rhue v. State*, 603 So. 2d 613, 615 (Fla. 2nd DCA 1992). In determining the first prong, the Court notes that attorneys are "accorded wide discretion in closing argument." *Foxworth v. State*, 754 So. 2d 798, 799 (Fla. 2d DCA 2000). "A prosecutor does not violate her obligation to seek justice by arguing the state's case with passion and conviction." *Diaz v. State*, 797 So. 2d 1286, 1286 (Fla. 4th DCA 2001). In arguing to a jury, a prosecutor may make any legitimate argument based on logically drawn inferences from the evidence. *See Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982). "Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment." *Griffin v. State*, 866 So. 2d 1, 16 (Fla. 2003). After extensive review of the State's closing argument, the Court finds that, when taken in context of the entire argument, the State's comments constitute vigorous argument and a fair comment on the evidence. (See Transcript, November 7, 2002, pp. 227-240, attached). As such, the comment was not objectionable, and thus counsel cannot be deemed deficient for failing to have

objected.

The Court notes further that, even if the comment was objectionable, Defendant cannot meet the second prong of his burden in demonstrating ineffective assistance of counsel-namely, that counsel's deficiency prejudiced the outcome of his case. Specifically, the Court finds that counsel cured the deficiency by his own comments in closing argument that, when the camera was turned on, Defendant was not yet in the car:

> Mr. Edmunds was not in the car when the videotape was being turned around. You hear him actually getting into the car after that. Corporal actually said that the videotape was turned around before anybody gets in there, so it's a false statement that he actually saw it and was in the car.

Transcript, November 7, 2002, p. 246, attached.

As such, even if the State's comment warranted an objection, counsel cured his failure to lodge that objection by providing his own argument on the same issue.

Alternatively, after having reviewed all the evidence against Defendant as well as the videotape of Defendant in the car, the Court finds that, even if counsel had objected and the State's comment had been struck from the record, there is still not a reasonable probability that the outcome of the proceeding would have been different. As such, Defendant cannot demonstrate prejudice as a result of counsel's alleged deficiency. For all these reasons, the Court finds that Defendant warrants no relief on ground four of his Motion for Post Conviction Relief.

(Resp. Ex. 17 at record pp. 182-84).

First, the state post conviction court found that counsel was not deficient in failing to object to the prosecutor's statements because "when taken in context of the entire argument, the State's comments constitute vigorous argument and a fair comment on the evidence." (Resp. Ex. 17 at record p. 183). During trial, Officer Hevel testified that he had a video camera which hung from the ceiling of his police cruiser that was near the rear view mirror on the vehicle's windshield (Resp. Ex. 1, Vol. III at pp. 195-96). The camera usually faced the windshield, but could be adjusted in any direction (Id. at p. 197). A red light flashes when the camera is on (Id.). Officer Hevel testified that

28

he "activated the camera system prior to placing [Petitioner] in [his] car." (Id. at p. 198). Officer Hevel could not recall whether Petitioner's wife was already in his car before Petitioner was in the car (Id. at pp. 198-99). When the prosecutor asked "did you manipulate the actual camera before putting these people in the car?" Officer Hevel answered "Correct. I turned the camera so it actually faced the rear of the car, activated the microphone from the back of the car by this little switch, clicked that little switch and then once they were placed in the car, I just closed the door." (Id. at p. 199). (See Transcript, November 7, 2002, pp. 227-240, attached).

During his closing argument, the prosecutor stated in pertinent part:

Ladies and gentlemen, as far as the videotape, there are some things I want to point out on that videotape, because if you watch the videotape, it doesn't sound like it's a joke or this joke theory starts sounding a little forced.

Isn't it kind of obvious he is placing it up for the camera? And I'm going to point out some things that we submit supports that. Can everyone see this? Okay.

First off, you can see that somebody is moving the camera around and it starts at the front, out of the front window and then you can see as you saw it -- well, let me back up a little bit, it's moving.

From the front of the store around, around, around, until we face the gage and here you have the reflection of the glass. The plastic and you can see the hand of Corporal Hevel going up, turning on the camera and you can see the light flashing.

You can see him adjusting the camera right there. Where is it facing? Right at the Defendant and his wife. That is not small, it is not hidden. Do you think the Defendant is playing to the camera?

Then at a different point, he is still adjusting it, turning on the sound and pointing it. And as the tape goes on, you'll be able to see a head here and a head here (indicating). You can see it moving and at that time you'll be able to see the Defendant move over to his wife. Why? He didn't know the camera was on? And he doesn't know what was going on and then why does he all of a sudden start whispering or talking real low and then going into his story.

I'll give you an example. If you can find the right location here, it's quiet. Did

he tell them all you were ordering a pizza. Remember, that's after some whispering. You think he might be playing to the camera there? Did you tell them we were all ordering a pizza, like, you know, come on, go along with my story here. We're on camera. Go along with it. Did you notice that? Talking real, real silent and then all of a sudden start going into, it's a practical joke and then he gets loud and as the tape goes on, he repeats himself over and over again.

(Resp. Ex. 1, Vol. III at pp. 235-37).

Despite Petitioner's argument to the contrary, the prosecutor never stated during closing argument that "Petitioner and his wife were inside the police car, while Officer Hevel adjusted and activated the audio/video tape. . . ." (Dkt. 1 at pp. 20-21). Further, the prosecutor never argued that Officer Hevel testified that he activated and adjusted the camera while Petitioner and his wife were in his police cruiser (Resp. Ex. 1, Vol. III at pp. 227-40). Rather, it is apparent from the trial transcript and the transcript of the post conviction evidentiary hearing that the prosecutor was merely commenting on what the videotape was showing while it was playing for the jury during the prosecutor's closing statement (Id. at 235-37; Resp. Ex. 16 at record pp. 237, 244, 249, 284). Petitioner does not allege that the videotape itself does not show that Officer Hevel adjusted the camera at some point while Petitioner and his wife were in the police cruiser. Therefore, Petitioner has failed to demonstrate that the state court's decision that Petitioner's counsel was not deficient in failing to have objected to the prosecutor's statements was not objectively unreasonable.

Even if counsel's performance was deficient in failing to object to the prosecutor's comments, Petitioner has failed to demonstrate that the state court's determination that Petitioner failed to show prejudice was either an unreasonable application of *Strickland*, or based on any unreasonable findings of facts. As the state post conviction court found, even if the prosecutor's comments were objectionable, defense counsel rebutted those comments by arguing that the evidence

30

showed Petitioner was put in the police cruiser after the camera was adjusted (Resp. Ex. 1, Vol. III

at pp. 225, 246).  Further, counsel argued that Petitioner and his wife did not know that there was

a camera or microphones in the cruiser because the microphones were hidden, and it was too dark

in the cruiser to see the camera (Id. at p. 225).  Finally, the state trial court remedied any potential

harm from the prosecutor's comments by instructing the jury that the attorneys' arguments were not

evidence (Id. at p. 220), and that "[t]his case must be decided only upon the evidence that you have

heard from the testimony of the witnesses and have seen in the form of the Exhibits in evidence and

these instructions." (Id. at p. 261).  *See United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009)

("Because statements and arguments of counsel are not evidence, improper statements can be

rectified by the district court's instruction to the jury that only the evidence in the case be

considered." (quotation omitted)).

The Court finds that the state courts' denial of this claim was neither an unreasonable

application of *Strickland* nor based on an unreasonable determination of the facts.  Accordingly,

Sub-Claim D does not warrant relief.

5. Sub-Claim E

WHEN COUNSEL FAILED TO OBJECT TO THE STATE'S EVIDENCE AND ARGUMENT
CONCERNING A PURPORTED JOB APPLICATION AT BLOCKBUSTER OR AT LEAST
OFFERING TESTIMONY TO MINIMIZE THE IMPACT OF THE STATE'S EVIDENCE AND
ARGUMENT. (Dkt. 1 at p. 23).

Petitioner contends that trial counsel was ineffective in failing to object to the "case

detective['s]" testimony regarding the distance between Petitioner's residence and the Blockbuster

video store in which he was arrested, and the "time of night" Petitioner was in the Blockbuster, as

irrelevant (see Dkt. 1 at p. 24).[10]  Petitioner argues that during closing statements, the prosecutor used

the detective's testimony that Petitioner was arrested at 10:30 p.m. in a Blockbuster store[11] that was

more than 22 miles away from Petitioner's residence, to support his argument that Petitioner did not

go into the Blockbuster to rent a video or complete an employment application, but rather to avoid

the police.   Petitioner further argues that if the evidence was relevant, then defense counsel was

ineffective in failing to present evidence showing either that Petitioner did not attempt to fill out a

job application, or that the equipment in the Blockbuster that is used to complete a job application

allows an individual to submit an application to any Blockbuster store in the United States, or to

check the status of a previously submitted application.[12]

In state court, Petitioner raised this claim in his Addendum to Previously Filed Pro Se Motion

for Post Conviction Relief (Resp. Ex. 14).   In denying the claim, the state post conviction court

stated:

> Defendant alleges ineffective assistance of counsel for failure to object to the State's
> evidence and argument concerning a purported job application at Blockbuster Video.

---

[10]Petitioner neither identifies the name of the "case detective," nor the specific testimony he asserts was irrelevant.  It appears, however, that Petitioner is referring to Officer Mathew Smith's testimony that Petitioner lived in Palm Harbor, Florida, which is approximately "a 45 minute drive" to the Blockbuster store in which Petitioner was arrested (Resp. Ex. 1, Vol. II at pp. 149-50), and Officer John Haggart's testimony that he arrived at the Blockbuster shortly after he received a call at 10:30 p.m. informing him that an attempted robbery had occurred at the nearby Hungry Howie's (Id. at p. 153).

[11]The Blockbuster store was located within 150 feet of the Hungry Howie's (Resp. Ex. 1, Vol. II at p. 154).

[12]Respondent argues that this claim is unexhausted because Petitioner failed to raise it in his brief on appeal from the denial of his Rule 3.850 motion (Dkt. 16 at p. 29).  Respondent's argument is rejected based on *Cunningham v. State*, 2012 Fla. App. LEXIS 1944, 2012 WL 413812 (Fla. 2nd DCA 2012).  Between December, 2000, and September, 2010, the Second District Court of Appeal of Florida required briefing only for grounds that were denied after an evidentiary hearing.  Therefore, Petitioner's failure to brief the summarily denied claim caused no procedural default because the claim was automatically reviewed by the appellate court under that court's internal procedures during that time. Because Petitioner's appeal of the post conviction court's denial of his post conviction motion was filed in 2008, this claim is neither unexhausted nor procedurally defaulted.

Specifically, Defendant contends that, at trial, testimony was admitted that Defendant had been apprehended inside a Blockbuster Video at a certain time while sitting at a job application table; that this Blockbuster Video was near the Hungry Howies crime scene; and the distance from this Blockbuster to Defendant's home. Defendant contends further that this evidence should have been objected to as irrelevant, and that counsel's failure to raise such an objection rendered his performance deficient. In its Response, the State explains that an objection to this evidence would not have been sustained, as this evidence was relevant. (See State's Response, attached). Specifically, the State explains that this evidence was relevant on the issue of whether Defendant's actions that night constituted "a joke" as purported by the defense, or whether it constituted an attempted robbery with a deadly weapon while wearing a mask. (See State's Response, attached). The Court finds the State's Response to be persuasive, and finds that an objection to this evidence would not have been sustained as this evidence was relevant and admissible. As any objection to this evidence would have been overruled, Defendant has failed to demonstrate prejudice as a result of counsel's failure to object.

(Resp. Ex. 15 at record p. 148).

To the extent Petitioner argues that counsel rendered ineffective assistance in failing to object to the testimony regarding the distance between Petitioner's residence and the Blockbuster store, and the time of night Petitioner was in the Blockbuster, the claim is without merit.[13]  It is not within the province of this Court to determine whether the state courts properly resolved an issue of state law. That is for the state courts to decide.  *Herring v. Secretary, Dept. of Corrections*, 397 F. 3d 1338 (11th Cir. 2005).  Because the state court determined that the testimony was appropriate under state law, Petitioner's trial counsel did not perform deficiently by failing to object. It is not deficient performance to fail to object to matters that are not objectionable. *See Diaz v. Sec'y for Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (failure to raise meritless arguments will not render counsel's performance ineffective).  And, had the objection been made by trial counsel, it would

---

[13]The record reveals that defense counsel did object to the prosecutor's question "Were you able to determine where [Petitioner] lived?" on the ground that it was irrelevant (Resp. Ex. 1, Vol. II at p. 149).  The objection, however, was overruled (Id.).

33

have been overruled by the trial court. Therefore, there was no prejudice. Consequently, this claim fails both prongs of the *Strickland* test.

With regard to Petitioner's alternative claim, i.e., that counsel should have offered "testimony to minimize the impact" of the officers' testimony, the claim likewise is without merit. Petitioner apparently argues that counsel should have called either an employee of the Blockbuster store in which he was arrested, or a private investigator who could have investigated the employment application procedure at the Blockbuster store, to testify at trial (Dkt. 1 at p. 25). Petitioner appears to assert that an employee or an investigator would have testified either that Petitioner did not attempt to fill out an application at the store, or that the equipment in the Blockbuster allows an individual to submit an application to any Blockbuster store in the United States, and to check the status of a previously submitted application (Id.).

First, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, 1996 WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed,* 106 F.3d 408 (9th Cir. 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*.

34

Petitioner has failed to present evidence of actual testimony or any affidavit from a Blockbuster employee, an investigator, or any other individual attesting either that Petitioner did not complete an application while he was in the Blockbuster, or that the equipment in the Blockbuster could be used to apply for a position at any Blockbuster store or check on a prior application for employment. Therefore, Petitioner only speculates on their proposed testimony and presents no evidence showing that they would have testified as Petitioner hypothesizes.

Second, in light of the strong evidence presented by the State at trial, Petitioner offers no reason to believe that there is a reasonable probability that testimony regarding these matters would have changed the outcome of the trial. *See, e.g., United States v. Tavares*, 100 F.3d 995, 998, 321 U.S. App. D.C. 381, (D.C.Cir. 1996) (where the record establishes no reasonable probability that the defendant's asserted testimony would have changed the outcome of the trial, the defendant has failed to make a showing of prejudice). Consequently, Petitioner cannot show that he was prejudiced by counsel's failure to present the proposed testimony.

The Court finds that the state courts' denial of this claim was neither contrary to nor unreasonable application of *Strickland*. Accordingly, Sub-Claim E does not warrant relief.

6. Sub-Claim F

WHEN COUNSEL MISADVISED THE PETITIONER ABOUT PETITIONER'S RIGHT TO TESTIFY MAKING HIS DECISION NOT TO TESTIFY INVOLUNTARY. (Dkt. 1 at p. 26).

Petitioner contends that his decision not to testify was based on misadvice by trial counsel. Specifically, Petitioner asserts that in making his decision not to testify, he relied on counsel's misadvice that: 1) if he testified and incorrectly stated the number of prior felony convictions he had, the nature of his prior felony offenses would be presented to the jury; 2) Petitioner would lose the

right to have both first and last closing argument if Petitioner testified; 3) his testimony was not necessary because the video tape of Petitioner and Jennifer Edmunds in the back of the police cruiser was presented at trial; and 4) if he testified, the jury would find him guilty (Dkt. 1 at p. 26). Petitioner argues that counsel's advice that the nature of Petitioner's prior felony convictions would be revealed, and he would lose the right to first and last closing argument if Petitioner testified, were misstatements of the law (Id. at p. 30).   He further argues that counsel's advice that Petitioner's testimony was unnecessary, and if Petitioner testified he would be found guilty, "was a patently unreasonable tactical decision."  (Id.).

In state court, Petitioner raised a similar claim in Ground Five of his amended Rule 3.850 motion (Resp. Ex. 10).   There, Petitioner's claimed that "counsel improperly influenced the defendant's decision not to testify at trial[.]" (Id. at record p. 29).   He alleged that during trial, after the State rested and defense counsel's motion for judgment of acquittal was denied, he and defense counsel discussed whether Petitioner would testify (Id. at record p. 31).   He alleged that during that discussion "[t]rial counsel simply told the Defendant that (1) I don't want the state to bring up your prior record to the jury; and (2) I want the double closing argument."  (Id.).   Petitioner then alleged that "counsel never made clear that the state could only ask the number of prior felonies, and, not the nature of those prior felonies."  (Id. at record pp. 31-32).   He also complained that counsel did not discuss "the pros and cons of the defendant taking the stand to testify," and did not explain that "defendant could take the stand and testify regardless of counsel's personal desires[.]" (Id. at record p. 31).

In denying the claim, the state post conviction court stated:

> In ground five of his Motion, Defendant alleges ineffective assistance of

counsel for improperly influencing Defendant's decision to not testify at trial. Specifically, Defendant contends that counsel failed to discuss with him both the advantages and disadvantages to testifying. At the evidentiary hearing, counsel testified that he reviewed with Defendant the advantages and disadvantages of Defendant testifying, that Defendant made the decision not to testify at trial, and he did not coerce or improperly influence that decision. (See Transcript, February 1, 2007, pp. 85-87, 102-103, attached). The Court finds this testimony to be credible, and finds that this evidence refutes Defendant's allegation. As such, Defendant warrants no relief on ground five of his Amended Motion for Post Conviction Relief.

(Resp. Ex. 17).

With regard to Petitioner's assertion that counsel misadvised him that if he testified and incorrectly stated the number of prior felony convictions he had, the nature of his prior felony offenses would be revealed, the claim is both unexhausted and without merit. In his amended Rule 3.850 motion, Petitioner did not allege that counsel told him that the State could question him regarding the nature of his prior felony convictions. Rather, he alleged that counsel told him "I don't want the state to bring up your prior record to the jury," and did not make it clear that "the state could only ask the number of prior felonies, and, not the nature of those prior felonies." (Resp. Ex. 10 at record pp. 31-32). Therefore, the claim Petitioner raises in the instant federal habeas petition is not the same claim that he exhausted in state court.

Any aspect of Petitioner's claim that was not exhausted and which would clearly be barred if returned to state court must be dismissed. *Tower v. Phillips*, 7 F.3d at 210. "An issue that was not properly presented to the state court which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review." *Cobbs v. McDonough*, 2006 U.S. Dist. LEXIS 52456, 2006 WL 2092381 at *8 (M.D. Fla., July 26, 2006) (citing *O'Sullivan v. Boerckel*, 526 U.S. at 839-40).

It would be futile to dismiss to give Petitioner the opportunity to exhaust this claim because

his claim would be procedurally barred because of the two-year time limitation of Rule 3.850, *Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir. 1990) (recognizing and applying two-year bar of Rule 3.850), as well as Florida's successive petition doctrine, *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Because Petitioner does not allege cause and prejudice for the default, nor is there evidence of "actual innocence," the claim is procedurally barred in federal court.

Even if the claim was not procedurally barred, if would fail on the merits. In Florida, "[c]ertified copies of prior convictions are admissible to impeach a witness who falsely testifies as to the number of crimes for which he has been convicted." *Pryor v. State*, 855 So. 2d 134, 136 (Fla.1st DCA 2003) (citing § 90.610(1), Fla. Stat. (2001)). "The proper method to impeach the witness who answers the question regarding his prior convictions incorrectly, is to offer a certified record of the witness's prior convictions, *which will necessarily reveal the nature of the crimes*." *Tampling v. State*, 610 So. 2d 100, 101 (Fla. 1st DCA 1992) (emphasis added). Therefore, defense counsel's alleged advice to Petitioner, to wit, that the nature of his prior convictions could be revealed if he inaccurately testified regarding the number of prior convictions, was a correct statement of the law.[14] Accordingly, Petitioner has failed to show that counsel performed deficiently.

With respect to Petitioner's assertion that counsel advised him that if Petitioner testified, Petitioner would lose the right to have both first and last closing argument, the claim is unexhausted. In his amended Rule 3.850 motion, Petitioner did not allege that counsel advised him that he would lose first and last closing if Petitioner testified (Resp. Ex. 10 at record pp. 29-33). Rather, Petitioner

---

[14]During the evidentiary hearing on Petitioner's amended Rule 3.850 motion, defense counsel testified in pertinent part that he advised Petitioner that the State "could bring up the number of convictions, they couldn't go into the details of them unless [Petitioner] got the number wrong." (Resp. Ex. 16 at record p. 271).

38

only asserted, in pertinent part, that prior to the defense resting without presenting any evidence,[15] counsel told him "I want the double closing argument."  (Id. at p. 31).  Therefore, the claim Petitioner raises in the instant federal habeas petition is not the same claim that he exhausted in state court.

It would be futile to dismiss to give Petitioner the opportunity to exhaust this claim because his claim would be procedurally barred in state court.  *See Whiddon v. Dugger*, 894 F.2d 1266; *Zeigler v. State*, 632 So. 2d at 51.  Because Petitioner does not allege cause and prejudice for the default, nor is there evidence of "actual innocence," the claim is procedurally barred in federal court.

Moreover, even if not procedurally barred, the claim fails on the merits.  During the evidentiary hearing on Petitioner's amended Rule 3.850 motion, Petitioner's trial counsel testified that he did not tell Petitioner that he would lose first and last closing arguments if Petitioner testified (Resp. Ex. 16 at record p. 272).  Rather, counsel testified that he believed he told Petitioner that they would lose first and last closing arguments if Petitioner's wife testified (Id.).  The post-conviction court found counsel's testimony credible (Resp. Ex. 17 at 184-85).

"The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." *Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) (citing 28 U.S.C. § 2254(e)(1)).  Petitioner has not demonstrated by clear and convincing evidence that the state court's factual determination is incorrect.  Counsel, therefore, did not misadvise Petitioner, as Petitioner would have lost first and last closing arguments had Petitioner's wife testified. See Fla. R. Crim. P., Rule 3.250 (2002). Consequently, Petitioner has failed to establish deficient performance.

___

[15]See Resp. Ex. 1, Vol. III at p. 211.

39

Finally, with regard to Petitioner's claim that counsel advising him not to testify "was a patently unreasonable tactical decision," the claim is unexhausted. Petitioner did not allege in state court that counsel's advice was unreasonable trial strategy (Resp. Exs. 10, 19). Because Petitioner does not allege cause and prejudice for the default, nor is there evidence of "actual innocence," the claim is procedurally barred in federal court.

Moreover, the claim is without merit. During the state evidentiary hearing, Petitioner's trial counsel testified in pertinent part that he did not think it was a good idea for Petitioner to testify (Resp. Ex. 16 at record p. 288), that "everything [Petitioner] was going to say was [on the videotape of Petitioner and his wife's conversation in the police cruiser]" (Id.), and that he advised Petitioner "that if everything was going the way we wanted to at trial then. . .it probably wouldn't be a good idea for him to testify based on his. . .drug use admissions and his prior convictions." (Id. at record p. 279).

Petitioner's counsel was not deficient for advising Petitioner not to take the stand to testify. Petitioner's defense that he was attempting to play a practical joke on his wife was revealed through the video tape. The credibility of Petitioner's story was crucial to his case. If Petitioner testified, the State would have challenged Petitioner's credibility on cross-examination, and the jury would have learned that he had seven prior felony convictions[16] and had been using drugs on the day of the attempted robbery.[17]  *See Jones v. Sec'y, Dep't of Corr.*, 487 Fed. Appx. 563, 567 (11th Cir. 2012)

---

[16]See Resp. Ex. 16 at record pp. 220, 245, 288.

[17]In Florida, "evidence of drug use by a witness for purposes of impeachment would be excluded unless: (a) it could be shown that the witness had been using drugs at or about the time of the incident that was the subject of the testimony of the witness; (b) it could be shown that the witness was using drugs at or about the time of the testimony itself; or (c) it was expressly shown by other relevant evidence that the prior drug use affected the witnesses ability to observe, remember, and recount."  *Nova v. State*, 874 So. 2d 1263, 1265 (Fla. 5th DCA 2004).

(unpublished) ("There is, at the very least, a reasonable argument that Jones' counsel was not deficient for advising Jones not to take the stand. . . . He cannot establish that 'no competent' counsel would have advised him not to take the stand, particularly because the State would have challenged Jones' credibility on cross-examination and the jury would have learned that he had five prior felony convictions.") (citation omitted).  Petitioner cannot establish that "no competent counsel" would have advised him not to take the stand.

Accordingly, for the foregoing reasons, Sub-Claim F does not warrant relief.

7. Sub-Claim G

CUMULATIVE EFFECT OF COUNSEL'S ERRORS (Dkt. 1 at p. 31).

Petitioner complains that the cumulative effect of counsel's deficient acts rendered his trial fundamentally unfair.  In denying this claim, the state post conviction court stated "as all of Defendant's other grounds of ineffective assistance of counsel were denied by this Court, Defendant's claim of cumulative error must fail."  (Resp. Ex. 19 at record p. 895).

Petitioner's claim of cumulative error necessarily fails, since none of his claims of ineffective assistance of counsel have merit.  *Morris v. Secretary, Dept. of Corrections*, 677 F.3d 1117, 1132 (11th Cir. 2012) (where none of individual claims of error or prejudice have merit, "we have nothing to accumulate.").  Consequently, Petitioner has failed to demonstrate that the state courts' denial of this claim was contrary to clearly established Supreme Court law, or based on an unreasonable determination of the facts.  Accordingly, Sub-Claim G does not warrant relief.

**"12 C STATE EVIDENTIARY PROCEEDINGS" and "12 D ADJUDICATION OF THE MERIT OF GROUNDS ONE SUB CLAIMS A THROUGH G" (Dkt. 1 at pp. 32-37)**.

In pages 32 through 37 of Petitioner's federal habeas petition, he appears to submit argument

in support of the seven claims of ineffective assistance of counsel raised in Ground Three of the petition (Dkt. 1 at pp. 32-37).   Specifically, he appears to argue that he was denied due process during the state post conviction proceedings because he did not receive a full and fair evidentiary hearing on his ineffective assistance of counsel claims, his trial counsel's testimony during the evidentiary hearing was not credible, and the state post conviction court's factual findings were not supported by competent, substantial evidence (Id.).

To the extent Petitioner intended these arguments to constitute separate substantive claims,[18] they are denied because they do not state a claim on which this Court may grant habeas relief.  As noted *supra*, a prisoner's challenge to the process afforded him in a state post conviction proceeding does not constitute a cognizable claim for habeas corpus relief.  *Carroll v. Secretary, DOC, Fl. Attorney Gen.*, 574 F.3d at 1366; *Spradley v. Dugger*, 825 F.2d at 1568; *Quince v. Crosby*, 360 F.3d at 1261-62.

**"12 E. NEED FOR ACTUAL INNOCENCE ANALYSIS"** (Dkt. 1 at p. 37).

Petitioner appears to allege a substantive claim of "actual innocence."  The claim is denied. First, a free-standing claim of actual innocence cannot be brought as a substantive claim for relief in a federal habeas action. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995) ("[A] claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005) ("Actual innocence is not itself a substantive claim, but rather serves only to lift [a] procedural

---

[18]Respondent construed these arguments as separate substantive claims (Dkt. 16 at pp. 31-34).

bar caused by a [petitioner]'s failure to timely file his § 2255 motion.").

Second, Petitioner fails to state a colorable claim of actual innocence. A petitioner in a collateral proceeding who wishes to establish his or her actual innocence to avoid a procedural bar to consideration of the merits of his or her underlying claim must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298. This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. at 327-28). As the *Schlup* court held: To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup v. Delo*, 513 U.S. at 324. Petitioner must establish factual innocence rather than mere legal insufficiency. *Id.*; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). In other words, this exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause) (footnote omitted).

Petitioner has presented no "new reliable evidence" nor do his allegations suggest that any such evidence exists. Instead, Petitioner complains of "counsel's failures, Ms. Edmunds not being called as a witness at trial, [and] the state prosecution utilizing a none [sic] testifying witness (Ms. Edmunds) to substantiate its theory of prosecution." (Dkt. 1 at p. 37). Petitioner's arguments are not based on new reliable evidence and fail to show that "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **DENIED**  (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on September 6th, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copy to: Petitioner *pro se*
          Counsel of Record

44